## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **PAIGE DIXON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LEWISVILLE INDEPENDENT SCHOOL** | § | **CIVIL ACTION NO. _____** |
| **DISTRICT, AND BUDDY BONNER,** | § | |
| **ALLISON LASSAHN, ANGIE COX,** | § | |
| **KATHERINE SELLS, JENNY PROZNIK,** | § | |
| **KRISTI HASSETT, AND TRACY SCOTT** | § | |
| **MILLER, IN THEIR OFFICIAL** | § | |
| **CAPACITIES,** | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT FOR DECLARATORY AND
## PERMANENT INJUNCTIVE RELIEF CONCERNING
## VIOLATIONS OF SECTION 2 OF THE VOTING RIGHTS ACT

### BREWER STOREFRONT

By: */s/ William A. Brewer III*
William A. Brewer III
State Bar No. 02967035
wab@brewerattorneys.com
Joshua Brandau
State Bar No. 24124297
(Eastern District Admission Pending)
jyb@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

### ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................................................................................1

II. JURISDICTION AND VENUE.................................................................................3

III. PARTIES ...............................................................................................................4

    A.    Plaintiff ....................................................................................................4

    B.    Defendants ...............................................................................................7

IV. FACTS ...................................................................................................................9

    A.    The Lewisville Independent School District...........................................9

    B.    LISD's At-Large Election System Discourages Minority Participation In The Electoral Process...........................................................................10

    C.    Affluent White Trustees Do Not Represent A Significant Portion of This Diverse Multiethnic, Multiracial, And Multilingual Community.........................11

    D.    LISD's All White Board Fails Non-White Children. ............................11

    E.    LISD Is Segregated By Race . .................................................................13

    F.    The Discriminatory Effects Of LISD's Electoral System Upon Minority Voters: LISD's De Facto Segregated Schools Are Failing...................15

    G.    Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place. ........................................................................19

V. CLAIMS.................................................................................................................20

    A.    Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act ............................................................................................20

    B.    Count 2: Violations Of The Fourteenth And Fifteenth Amendments Of The Constitution...........................................................................................21

    C.    Count 3:  Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth and Fifteenth Amendments Of The Constitution ...............21

    D.    Count 4:  Request For Attorneys' Fees.................................................22

VI. REQUEST FOR RELIEF .....................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Branch v. Smith,*
    538 U.S. 254 (2003)........................................................................................20

*Zimmer v. McKeithen,*
    485 F.2d 1297 (5th Cir. 1973) ......................................................................19

**Statutes**

28 U.S.C. § 1331 ...........................................................................................................3

28 U.S.C. § 1343(a)(3) ..................................................................................................3

28 U.S.C. § 1343(a)(4) ..................................................................................................3

28 U.S.C. § 1391(b)(1) ..................................................................................................3

42 U.S.C. § 1988(b) .....................................................................................................22

Section 2 the Voting Rights Act of 1965, 52 U.S.C. § 10301 .......................................2

Tex. Educ. Code Ann. § 11.054 (b)-(c) ........................................................................19

Voting Rights Act ...............................................................................................20, 21, 22

Voting Rights Act. Pursuant to 52 U.S.C. § 10310(e)..................................................22

Voting Rights Act Section 2 ...............................................................................1, 20, 21, 22

Plaintiff Paige Dixon files this Complaint for Declaratory and Permanent Injunctive Relief Concerning Violations of Section 2 of the Voting Rights Act (this "Complaint") against defendants Lewisville Independent School District ("LISD" or the "District"), and Buddy Bonner, Allison Lassahn, Angie Cox, Katherine Sells, Jenny Proznik, Kristi Hassett, and Tracy Scott Miller in their official capacities as members of the LISD Board of Trustees (each individually, a "Trustee," and collectively, the "Trustees," the "Board," or "Defendants"), as follows:

## I.

## <u>PRELIMINARY STATEMENT</u>

1.      Elected school board trustees, responsible for overseeing and managing the public-school systems, occupy the most important positions in representative government because they directly impact the education of future generations. It is, therefore, critical that voting schemes give a fair opportunity for participation to all in a community with an increasingly diverse student population and community interests. Unfortunately, when the electoral process by which officials are chosen "stacks the deck" against people of color such bodies cease to be "representative."

2.      The District's at-large system for electing the seven-member LISD Board of Trustees effectively denies membership and representation to African Americans, Hispanics, Asians and other people of color – including Ms. Dixon, who is African American.  This is egregious because people of color comprise a significant portion of eligible voters within LISD – and an even larger percentage of the District's student population. Even as racial, ethnic, and language minorities now comprise a significant portion of eligible voters within LISD, all seven Trustees are white. Notably, since 2010, all eight minority candidates who ran for the school board (one of whom ran twice) lost their elections to a white candidate.

3.      In aggregate, LISD is racially and ethnically diverse, with students of color forming over 62% of the total student body in 2020-21, according to the Texas Education Agency's (the

1

"TEA") 2020-21 Texas Academic Performance Report. The demographic breakdown of LISD students is 37.6% white, 30.5% Hispanic, 15.5% Asian, 11.6% African American, 4.4% two or more races, 0.4% American Indian, and 0.1% Pacific Islander. Despite racial and ethnic diversity, however, the District is racially polarized as proved at the ballot box.

4.       Predictably, a large achievement gap exists between a small fraction of schools that enroll mostly white students and the schools in the District that educate children who are predominantly people of color.  The Board, which oversees a more than $579 million general fund expenditures budget, is failing the non-white population. In their most formative years, minority children within LISD are receiving a second-rate education, with fewer than one in five students meeting grade level in the lowest-performing schools.  On the other hand, at the elementary schools in the attendance areas where most current Trustees reside, the majority of the children meet grade level across all grades and subjects tested. Sadly, the Board consistently prioritizes this cluster of predominantly white schools at the expense of the rest of the community.

5.       Ms. Dixon brings this Complaint because the at-large election system presently employed in this District denies equal voting opportunity to voters of color and many of the parents of children enrolled in LISD schools, and thereby denies these residents the opportunity to elect candidates of their choosing to represent their communities. Accordingly, Ms. Dixon seeks judicial relief for violations of Section 2 the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "Voting Rights Act") and the Fourteenth and Fifteenth Amendments of the United States Constitution, U.S. Const. amend. XIV and XV (the "Constitution").

6.       Specifically, Ms. Dixon requests that the Court issue a permanent injunction prohibiting LISD, its Trustees, agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Board under an at-large

electoral system, and a declaratory judgment declaring the current at-large system in LISD violates federal law. This relief will ensure that Ms. Dixon's voice and the voices of the parents of the majority of the children attending LISD will be heard regarding the decisions affecting the fate of LISD's children.

## II.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to:  (i) 28 U.S.C. § 1331, which grants United States district courts original jurisdiction over any civil action "arising under the . . . laws . . . of the United States"; (ii) 28 U.S.C. § 1343(a)(3), which grants district courts original jurisdiction over any civil action to redress a deprivation of any right secured by a law of the United States "providing for the equal rights of citizens or of all persons within the jurisdiction of the United States"; and (iii) 28 U.S.C. § 1343(a)(4), which grants district courts original jurisdiction over any civil action under "any Act of Congress providing for the protection of civil rights, including the right to vote."

8.      This Court has personal jurisdiction over LISD because the District is located primarily in Denton County, Texas, with smaller portions in Dallas County, Collin County, and Tarrant County, Texas. This Court also has personal jurisdiction over the Board of Trustees because the seven Trustees reside in Denton County, within the Eastern District.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in the State of Texas and all are residents of the Eastern District.

### III.

### PARTIES

**A.**     **Plaintiff**

      10.      Ms. Dixon is a United States citizen and registered voter who resides within the boundaries of LISD. Ms. Dixon, who is African American, is also an active member of her community and is a U.S. Army combat veteran, having served two tours of duty in Iraq.  Ms. Dixon previously served as Parent Teacher Association (PTA) President at Rockbrook Elementary School in LISD from 2017 to 2021. Ms. Dixon's community involvement is extensive; in addition to her work as PTA President, she has been a member of the LISD Academic Calendar and Superintendent Parental Advisory Committees; she chaired the Lewisville ISD Council of PTAs' Advocacy Committee; she served as a volunteer coordinator of the LISD High School Band Booster Club; she volunteered for Denton County Meals on Wheels; and she is a member of the Concerned Citizens & African-American Parents, an advocacy group established in 2003 by a group of parents who wanted to improve the educational experience for African American students in LISD.

      11.      Ms. Dixon's commitment to the success and equality of LISD schools is without question—both of her sons attended LISD schools. Her 11-year-old son is attending virtual school outside LISD this year as a sixth grader, but previously attended LISD's Rockbrook Elementary School virtually last year (due to the COVID-19 pandemic). Her 16-year-old son is a sophomore at the Lewisville High School Harmon campus, where he participates in band and gifted and talented coursework.

      12.      Ms. Dixon is an advocate for the interests of minority and low-income students in LISD. In 2021, she ran for Place 1 on the LISD Board of Trustees. In her campaign literature she stated, "I feel that it's incredibly important to have diversity on the school board so members can

speak collectively to everyone's unique and diverse needs. My time as [Rockbrook Elementary School] PTA president…has made me aware of the biases in the district and how certain areas within LISD are being underserved. LISD is a great district, but I want it to be great for everyone."

13.     It is important to Ms. Dixon that the District take into consideration the needs and concerns of minority students attending LISD. She is concerned about the student achievement gap in LISD, as well as disparate disciplinary treatment of minority students. She also believes that different academic coursework is offered in some schools based upon ethnic lines.

14.     In particular, Ms. Dixon is concerned about the students who attend her neighborhood elementary school, Rockbrook, where only 27% of the school's students met grade level requirements across all grades and subjects tested on the State of Texas Assessments of Academic Readiness (the "STAAR") exams in 2021.  Notably, in 2020-21, about 58.7% of children enrolled at Rockbrook were economically disadvantaged, and about 87.2% were students of color—African American (48.3%), Hispanic (28.2%), Asian (6%) and two or more races (4.3%).  Without representation on the Board, the children at Rockbrook Elementary School and similar LISD schools lack trustees with a vital stake in the neighborhood to represent them when important decisions are made.  Instead, all such decisions are made by Trustees who reside in different neighborhoods with different interests.

15.     Ms. Dixon was motivated to run for the LISD school board given her firsthand experiences as a mother of two LISD students. At Rockbrook, she became concerned about the high teacher turnover and its negative effects on the campus while she was serving as PTA president. She believes that her insights as a single mother, community volunteer, and education advocate could offer a unique perspective to the LISD board.

16.     Ms. Dixon knows that the at-large system leaves the needs and concerns of the vast majority of LISD schoolchildren without advocates on the Board.  The current electoral process denies Ms. Dixon and her friends and neighbors—African Americans, Hispanics, Asians, and other minorities—an equal opportunity to elect representatives of their choice. Indeed, Ms. Dixon experienced this firsthand when she ran for Place 1 on the LISD Board of Trustees in the May 1, 2021 election. She was defeated by Buddy Bonner, a white candidate who benefited from the at-large voting system that disadvantages minority communities. Mr. Bonner is an LISD insider, and previously worked for the school district as an Assistant Superintendent, campus administrator, and teacher.

17.     Ms. Dixon was a strong candidate for the LISD board. She received more than 43% of the 16,264 votes cast. Furthermore, Ms. Dixon was endorsed by former LISD Trustee Vernell Gregg, the only African American to ever serve on the LISD board, in addition to former LISD Trustee Barbara Morrison, a former school principal. Ms. Dixon was also endorsed by Lewisville Deputy Mayor Pro Tem Brandon Jones, who is also African American. Additionally, she was endorsed by the International Brotherhood of Teamsters local union 745 in Dallas and Greater Lewisville Association of Realtors.[1] However, this was not enough to overcome the polarization among the voters and an at-large system in LISD. Despite the support she enjoyed, she did not win the election.

18.     Ms. Dixon believes that the change from the at-large voting system to either a single-member districts or a cumulative voting system will empower people of color to run for

---

[1]     Paige   Dixon   For   LISD   School   Board   Place   1,   *Endorsements,*   PAIGEFORLISD, https://www.paigeforlisd.com/new-page-1 (last visited April 4, 2022).

6

Trustee positions, inspire greater electoral participation, and lead to a more equitable system of representation.

**B.**   **Defendants**

19.     LISD is an Independent School District located largely in Denton County, but also in Dallas County, Collin County, and Tarrant County, and created pursuant to Texas law.  LISD may be served with process through its Superintendent, Dr. Lori Rapp, at Lewisville Administrative Center, 1565 W. Main Street, Lewisville, Texas 75067.

20.     Buddy Bonner is a Trustee elected to Place 1 of the Board and resides within LISD. He may be served with process at 505 Drexel Drive, Lewisville, Texas, 75067.

21.     Allison Lassahn is a Trustee elected to Place 2 of the Board, is the Vice President of the Board, and resides within LISD.  She may be served with process at 955 Inverness Circle, Highland Village, Texas, 75077.

22.     Angie Cox is a Trustee elected to Place 3 of the Board and resides within LISD. She may be served with process at 3209 Seaton Court, Flower Mound, Texas, 75028.

23.     Katherine Sells is a Trustee elected to Place 4 of the Board, is the Secretary of the Board, and resides within LISD.  She may be served with process at 2206 Landoine Lane, The Colony, Texas, 75056.

24.     Jenny Proznik is a Trustee elected to Place 5 of the Board and resides within LISD. She may be served with process at 4578 Mira Vista Drive, Frisco, Texas, 75034.

25.     Kristi Hassett is a Trustee elected to Place 6 of the Board and resides within LISD. She may be served with process at 3500 Beringer Court, Flower Mound, Texas, 75022.

26.     Tracy Scott Miller is a Trustee elected to Place 7 of the Board, is the President of the Board, and resides within LISD. He may be served with process at 2810 Spring Hollow Court, Highland Village, Texas, 75077.

27.     The majority of the Trustees live within predominantly white neighborhoods. Four of seven Trustees reside within attendance zones for either Marcus High School or Flower Mound High School, both of which are majority white campuses and affluent (only 8% and 5% of students enrolled are classified economically disadvantaged at the two Flower Mound High School campuses). The newest Trustee, Mr. Bonner, is the only Trustee who resides within the Lewisville High School attendance zone. However, his biography states that he previously resided in Highland Village and Flower Mound and that three of his children are graduates of Marcus High School in Flower Mound (and one is a graduate of Lewisville High School). Either a single-member district system or cumulative voting scheme would impede such a concentration of power. Protective of their own self-interests, the incumbent Trustees have denied the community a more equitable and progressive electoral system, prompting the need for judicial intervention.

Of course, the most pernicious—yet predictable—effect of the above is the significant achievement gap which exists between the schools in LISD that serve mostly minority and economically disadvantaged students and those serving mostly white students. For example, at Mill Street Elementary School in Lewisville only 12% of children met grade level in 2021, compared with 73% of children testing at grade level at Liberty Elementary School in Flower Mound. Approximately 60% of children at high-performing Liberty Elementary School are white and only about 2% are economically disadvantaged. Meanwhile, at Mill Street, more than 72% of children are Hispanic and almost 76% are economically disadvantaged.

28.     Districtwide, a significant achievement gap exists for African American and Latino students. About 31% of African American students and 37% of Hispanic students met grade level in 2021, compared with almost 70% of white students.

# IV.

# FACTS

**A.      The Lewisville Independent School District.**

29.      LISD is predominantly located in Denton County, Texas, with small portions in Dallas County, Collin County, and Tarrant County, Texas. LISD encompasses 127-square miles and serves students from 13 municipalities including Argyle, Carrollton, Coppell, Copper Canyon, Double Oak, Flower Mound, Frisco, Grapevine, Highland Village, Hebron, Lewisville, Plano, and The Colony.  Founded in 1902, LISD has an enrollment of more than 49,000 students across more than 60 campuses.  LISD is among the largest school districts in Texas.

30.      Like many suburban school districts in Texas, LISD has experienced dramatic student demographic changes in recent years.  Consider that in the 2003-04 school year, the racial composition of the LISD student body was roughly 70% white, and only 12% of students came from economically disadvantaged backgrounds.  As of the 2020-21 school year, students of color comprised 62.4% of the LISD student body. According to the TEA, in 2020-21, the students enrolled in LISD were 37.6% white, 30.5% Hispanic, 15.5% Asian, 11.6% African American, 4.4% two or more races, 0.4% American Indian, and 0.1% Pacific Islander. Additionally, more than 31.4% of LISD's students were classified as economically disadvantaged and about 18.5% were English Learners.[2]

---

[2] An economically disadvantaged student is defined by the TEA as a student who is eligible for free or reduced-price lunch meals or eligible for other public assistance. English Learners are defined as students whose primary language is other than English who are in the process of acquiring English speaking skills.

**B.     LISD's At-Large Election System Discourages Minority Participation In The Electoral Process.**

31.     Under the District's at-large election system, all voters within LISD are permitted to vote on the candidates for every board seat. Trustees serve staggered three-year terms in positions called "places"—which have no geographic significance.  In other words, Trustees do not represent any specific territory or sub-district within LISD.  The at-large system discourages minority-preferred candidates from seeking office because it effectively functions as a white-controlled referendum on all candidates where white voters control all seven Trustee positions.

32.     Because whites vote as a bloc, LISD's at-large voting system prevents minority-preferred candidates from winning elections. In fact, minority candidates face and are defeated repeatedly by a majority white voting bloc that rejects minority candidates and elects white candidates. The at-large system encourages racially polarized voting within LISD that dilutes minority votes and allow white voters to block minority candidates from trustee seats.

33.     LISD has a significant history of minority candidates running for the school board and lost. Since 2010, eight minority candidates have run for nine positions on the board and lost. The candidates who ran and lost were:

- Tommy Kim in Place 3 in 2010, an Asian incumbent candidate;

- Reginald Johnson in Place 7 in 2011, an African American candidate;

- Vernell Gregg in Place 2 in 2012, an African American incumbent candidate;

- Mary Smith in Place 6 in 2014, an African American candidate;

- Mary Smith again in Place 1 in 2015;

- Fairooz Adams in Place 4 in 2016, an Asian candidate;

- David Hernandez in Place 2 in 2018, a Hispanic candidate;

- Paige Dixon in Place 1 in 2021, an African American candidate; and

- Sheila P. Taylor in Place 2 in 2021, an African American candidate.

34.     The result is a board that sets District policy without the input of or participation from those communities from which the majority of students reside.  Taken together, the at-large system and the obvious polarization of the white voters combine in the current Board, which does not reflect the composition of the real stakeholders of the public-school system.

**C.     Affluent White Trustees Do Not Represent A Significant Portion of This Diverse Multiethnic, Multiracial, And Multilingual Community.**

35.     The LISD Board is responsible for overseeing and managing a system of more than 60 campuses, with an annual budget of nearly $579 million, and over 49,000 students.  Although the composition of the LISD student body has diversified significantly in recent decades, the makeup of the Board remains white, affluent, and disconnected from the diverse multiethnic, multiracial, and multilingual community that the district serves.  In fact, the current composition of the LISD Board is representative of only a narrow slice of LISD's community.  The majority of LISD students are not white, however they and their parents remain unrepresented by the at-large elected LISD Trustees.

**D.     LISD's All White Board Fails Non-White Children.**

36.     As LISD grapples with how to address dramatic changes in its student demographics, it also faces pressing issues of poverty and inequality among students enrolled in certain LISD schools.  The LISD Board is responsible for ensuring that the District's resources are applied to meet the interests of every child within its boundaries.  Trustees are required to allocate resources in a manner that benefits its students equally—no matter the neighborhoods from which they come.  Unfortunately, the LISD Board's fiscal and policy decisions contribute to an unacceptable performance gap between white students attending favored schools and the majority of the "others."

37.     The impact of this perpetually monolithic Board is reflected by the inequality that exists among the District's 40 elementary schools. The achievement gap that exists between the lowest performing schools that are attended by children who are mostly minorities, and those of the high-performing schools situated in neighborhoods in which the all-white members of the LISD Board reside is shameful. The seven Trustees reside within the attendance zones of six elementary schools, and five of those schools serve a student body where white students make up the largest racial or ethnic group enrolled. Similarly, six of the seven Trustees live in elementary attendance zones where the percentage of children meeting grade level exceeds the LISD districtwide average of 54%. Six of the seven Trustees also reside within elementary attendance zones in which the economically disadvantaged percentage of students is far below the LISD average of 31.4% (reaching as low as 3% in one Trustee's neighborhood school).

38.     Meanwhile, at the five lowest-performing elementary schools in LISD based on the STAAR assessments, most of the students enrolled are students of color (Hispanic, African American and Asian).   At the lowest-performing school, Mill Street Elementary School in Lewisville, only 12% of students met the STAAR grade level requirements across all grades and subjects in 2021.  The student body is approximately 72.2% Hispanic.  The difference in the high performing schools in the neighborhoods where most of the Trustees reside and the lowest performing schools in LISD is stark: only 12% to 20% of students at the five lowest performing schools in LISD met grade level in 2021. Predictably, only the top-performing elementary schools have representation on the Board in the form of not just one—but two—trustees. Four of those five schools are located in Flower Mound and one is located in Castle Hills, a master-planned community in Lewisville.  However, *no* Trustees reside within attendance zones for the five lowest

12

performing elementary schools, which are performing well below the LISD overall district-wide average performance. Four of those schools are in Lewisville and one is in The Colony.

39.     This egregious achievement gap persists through every level of the LISD student experience. Although almost 70% of white students met grade level across all subjects and grades tested in 2021, only 37% of Hispanic students, and 31% of African American students met grade level.   Across all grades, in 2021, the reported rate of students that met grade level in reading was 70% for white students, 41% for Hispanic students, and 36% for African American students. In mathematics, the percentage of students who met grade level was 63% for white students, 31% for Hispanic students, and 22% for African American students.   The story of LISD is, then, a tale of two school districts where Hispanic and African American students are more often left behind while their white counterparts are set up for success.  Such disparity between schools in the same District is not inevitable.  Action must be taken to improve conditions throughout LISD.

**E.    LISD Is Segregated By Race.**

40.     On superficial, District-wide metrics alone, LISD appears to be a racially, ethnically, and socioeconomically diverse and integrated school district.  However, a closer look at LISD elementary schools reveals division and segregation, where many white students attend schools that are majority white and are separated from the vast majority of LISD students who are of color.

41.     And, predictably, the lowest-performing elementary, middle, and high schools within LISD are located within LISD's namesake: the City of Lewisville, where the student population is majority minority.

42.     Although there are five high schools in the District, the majority of low-income minority students are packed into one enormous, high-enrollment high school. In 2020-21, Lewisville High School, the oldest high school in LISD, enrolled an incredible 4,357 students on

its three separate campuses. It should be no surprise, then, that the highest proportion of Hispanic, African American, economically disadvantaged, and English Language Learner students are packed into this one mega-school, which is significantly larger than the other LISD high schools. For reference, only about 15.1% of Lewisville High School students were white in 2020-21, and nearly 54.2% of students were economically disadvantaged. Lewisville High School has the highest Hispanic student population of the five high schools. Hispanic students account for 54.4% of the Lewisville High School student body, 19.4% of students are African American, and 7.4% are Asian. Predictably, 47% of Lewisville High School students met grade level across all subjects and grades tested in 2021, the lowest average performance of any high school in LISD. Meanwhile, Ms. Dixon and her children have seen firsthand the unequal treatment among the schools. Her eldest son is currently a sophomore at Lewisville High School.  As mentioned above, just one of the current seven Trustees, Buddy Bonner, resides within the Lewisville High School boundaries or feeder pattern—and he publicly stated in his campaign bio that four of his children graduated from Marcus High School in Flower Mound—where approximately 70% of the students are white and 82% met grade level on assessments in 2021.

43.     Many of the lower performing LISD schools are also located within the City of The Colony.  No Trustee resides within the attendance zone for The Colony High School, another feeder pattern that is majority-minority in student enrollment.

44.     Indeed, many of the attendance areas serving the majority-minority and lower-income portions of the school district, namely the feeder elementary and middle schools for The Colony High School and Lewisville High School, remain unrepresented on the Board.

45.     Two Trustees reside within the Flower Mound High School attendance zone.  In 2021, 87% of students enrolled at top-performing Flower Mound High School met grade level

across all subjects and grade levels tested, reflecting a significant performance gap advantage over Lewisville High School. Notably, Flower Mound also has the lowest Hispanic enrollment of any high school, at 12.7%, the lowest African American enrollment of any high school at 3%, and the lowest percentage of economically disadvantaged students at 5%.

46.     This inequitable structure leaves large swaths of the District without a voice. Because of this broken and discriminatory election system, Trustees who reside in predominantly white neighborhoods wield power in determining the fates of a school district comprised of mostly non-white students. Furthermore, Hispanic, African American, and Asian voters are not afforded an equal opportunity to elect candidates of their choosing in the current at-large system. Sadly, LISD is not receiving input from all members of its community to address the complex issues such as overcrowding and the lingering patterns of segregation.

47.     All citizens of voting age will find a meaningful opportunity to participate through either a single-member district structure or cumulative voting system.  The current all-white LISD elected Trustees reside in a world apart from the children attending the lowest-performing schools in LISD. This broken governance system leaves the children who need an advocate the most without a voice on a Board as it makes decisions that steers millions of dollars in education funding and resources.

**F.     The Discriminatory Effects Of LISD's Electoral System Upon Minority Voters: LISD's De Facto Segregated Schools Are Failing.**

48.     Given the diverse makeup of LISD's Citizen Voting Age Population ("CVAP"), with people of color comprising about 35% of the CVAP, one would expect at least one non-white candidate to be elected as a Trustee.  However, the at-large system of voting discourages African American, Hispanic, Asian, and other minority-preferred candidates from running, because potential candidates know that they have no likelihood of winning.  Minority-preferred candidates

15

face a white voting bloc able to block such candidates from every seat in the District.  The control white voters wield over elected positions in government is compounded by issues such as low voter turnout and the lack of a federal or state election holiday.

49.     Moreover, voting in LISD is racially polarized.  Comprising a majority of CVAP, whites vote as a distinct bloc, resulting in the defeat of minority-preferred candidates for Board seats.  African Americans, Hispanics, and Asians within LISD are also a "politically unified group," who vote cohesively as a bloc when a candidate of their choice is pitted against a white candidate. Further, the African American, Hispanic, and Asian population in LISD are geographically compact.  If African American, Hispanics, and Asian eligible voters are considered together, they constitute a majority of eligible voters in at least one properly apportioned single-member electoral district. Yet, the current at-large system promotes racial polarization, which leads to no representation of the interests of the non-white community in LISD.

50.     The bloc control by white voters in LISD is evident. In the May 2018 election for Lewisville ISD Trustee Place 2, for example, Hispanic candidate David Hernandez finished second in a three-way race, despite strong support in large areas of Lewisville, where he was heralded by his friends and neighbors as their hope for representation on the Board. However, the winning candidate garnered the support of the predominantly white (and wealthier) city of Flower Mound.

51.     People of color in LISD also face a parallel history of public and private discrimination on the basis of race and/or ethnicity in employment, education, health services, and housing.  Historical discrimination against people of color has contributed to a lower socioeconomic status, and forms of discrimination against people of color exist to this day.  LISD maintained racially segregated schools until it desegregated Lewisville schools in 1964. This

history, along with the vote dilution created by the LISD electoral system, work in combination to prevent minorities from political participation on equal footing with white residents of LISD.

52.     Adequate representation in elected bodies is more important than ever given the significant non-white population in LISD.  TEA data shows that between the 2003-04 and 2020-21 school years, LISD's Hispanic student population more than doubled from 7,007 students to 15,012 students. Hispanic students comprise 30.5% of the student population in LISD, Asian students 15.5%, African American students 11.5%, and students of two or more races 4.4%. During the same time period, the white enrollment of LISD declined from 30,066 students to 18,504 students. Thus, while the Hispanic, Black and Asian student populations increased, the white population fell substantially. This dramatic shift in demographics is not reflected on the LISD Board, however, where every one of the current seven Trustees are white.  Unfortunately, but not surprisingly, teacher hiring practices in LISD have not mirrored the demographic shift.  In fact, 77% of LISD teachers are white, while only 12.7% are Hispanic, 5.8% are African American, and 2.2% are Asian.

53.     Importantly, the Board is tasked with the influential hiring decision of selecting the superintendent.   Furthermore, the superintendent works on a 15-member LISD "District Leadership" team that is comprised of 14 white members, 1 African American woman, and *no* Hispanic or Asian administrators.[3] When a prior voting rights lawsuit was filed against LISD in 2019, there were *zero* minorities on the leadership team, and only one minority has been added to the team (in November 2020) since the initial lawsuit highlighted the lack of representation.  The

---

[3] Lewisville Independent School District, *District Leadership,* LISD,  https://www.lisd.net/domain/97 (last visited April 4, 2022).

administrators "leading" the District and making critical decisions about the multiracial and multiethnic student body do not reflect the diverse majority-minority demographics of LISD.

54.     Overt racism in LISD continues to this day.  In February 2018, reports of racism at Marcus High School in Flower Mound surfaced after a photograph showing racial slurs and a swastika written on a school whiteboard was posted online.  This incident was reminiscent of earlier racist displays in the District.  In 2015, LISD drew negative national attention when "White Power" signs were displayed during a Flower Mound High School basketball game. These actions reflect the chasm between the "white" portion of the District and the predominantly minority schools in the District. Students of color and their families deserve better. LISD also made national headlines in May 2021 after placing an art teacher on leave from Downing Middle School in Flower Mound for allowing the phrases "Black Lives Matter" and "I can't breathe" on the back cover of the school yearbook. The local media reported that the yearbook cover included the phrase, "Science is real, Black Lives Matter, no human is illegal, love is love, women's rights are human rights, kindness is everything." The Cross Timbers Gazette reported that the teacher was reassigned from the (predominantly white) Downing to teach at the Lewisville High School-Harmon campus (a majority-minority campus).

55.     Clearly, the legacy of the LISD electoral system is one that blocks minority political participation and impairs the success of students of color.  Specific mechanisms contributing to this problem include: (1) at-large elections for all seven seats on the Board; (2) staggered election terms; and (3) a District-wide plurality vote requirement.  There is no legitimate reason to continue along this path. The time is long overdue for LISD to adopt a system that ensures that people of color have meaningful opportunity for full and fair participation in the election process.

**G.      Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place.**

56.     LISD's discriminatory voting system is a relic of the District's past and must be changed.  Although "at-large . . . districting schemes are not per se unconstitutional . . . where the petitioner can demonstrate that 'its members had less opportunity than did other residents in the district to participate in the political processes and to elect legislators of their choice,' . . . such districting schemes are constitutionally infirm."  *Zimmer v. McKeithen*, 485 F.2d 1297, 1304-05 (5th Cir. 1973) (internal citations omitted).

57.     Across the country and even the Dallas metro area, school districts with at-large election systems have recognized, either voluntarily or through judicial intervention, the inherent representational flaws in their voting structure and have switched to alternative voting structures, such as a single-member district system or cumulative voting system.

58.     Under single-member district elections, board seats are tethered to a specific geographic area of the school district. A single-member district system vests trustees with responsibility for the interests of actual communities, ensuring that all parts of the district participate in the board's decision-making process.

59.     Alternatively, included in the Texas Education Code, the cumulative voting structure enables each voter to cast a number of ballots, for any one or more candidates in the manner of their choosing, equal to the number of positions to be filled at the election (Tex. Educ. Code Ann. § 11.054 (b)-(c)). Through this structure, the minority population is granted access to the electoral process, and the possibility of the dilution of their votes is diminished.  Under cumulative voting, voters cast as many votes as there are candidates and may cast all of their votes for one candidate if they choose to do so.  Cumulative voting has the potential to promote trustees from the more disadvantaged and underrepresented communities within the district.

60.     Indeed, a "court could design an at-large election plan that awards seats on a cumulative basis, or by some other method that would result in a plan that satisfies the Voting Rights Act." *Branch v. Smith*, 538 U.S. 254, 310 (2003).

61.     The LISD electoral system violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution. Unless the Court directs LISD to design a single-member district structure or cumulative voting system that does not dilute the votes of African American, Hispanic, and Asian voters, the current discriminatory system will persist.

## V.

## CLAIMS

### A.     Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act

62.     The allegations set forth in paragraphs 1-61 above are hereby incorporated as if fully set forth herein.

63.     Section 2 of the Voting Rights Act prohibits any standard, practice or procedure that results in the denial or abridgment of minority voting rights.  Specifically, it forbids any electoral system that denies African Americans, Hispanics, Asians, and other minority groups an opportunity equal to that afforded to other members of the electorate to elect representatives of their choice.

64.     LISD's at-large electoral system for electing its Board unconstitutionally dilutes African American, Hispanic, and Asian voting strength and is not equally open to participation by LISD's non-white voters.  Further, the electoral system results in African Americans, Hispanics, and Asians having less opportunity than other LISD voters to meaningfully participate in the electoral process and to elect representatives of their choice.

65.     The African American, Hispanic, and Asian communities in LISD are sufficiently large, geographically compact, and constitute a politically unified group that votes cohesively as a

bloc, such that one or more properly-apportioned single-member electoral districts can be drawn in which minorities would constitute a majority of eligible voters.

66.     LISD Board elections are characterized by racially polarized voting in which the predominately white voting bloc votes in a way that regularly defeats the African American, Hispanic, Asian, and non-white communities' candidates of choice and has a chilling and discouraging impact on minority voter participation.  Thus, based on the totality of past and present circumstances, the LISD electoral system impermissibly dilutes the minority vote and stymies that community's ability to participate fully in the election process.

67.     Accordingly, Ms. Dixon requests that the Court issue a declaratory judgment stating that the LISD electoral system violates Section 2 of the Voting Rights Act.

**B.     Count 2: Violations Of The Fourteenth And Fifteenth Amendments Of The Constitution**

68.     The allegations set forth in paragraphs 1-61 above are hereby incorporated as if fully set forth herein.

69.     LISD's at-large voting system deprives the African American, Hispanic, and Asian communities of equal protection of the law in violation of the Fourteenth and Fifteenth Amendments of the Constitution.

70.     The at-large system has been maintained for a discriminatory purpose and has the effect of diluting, minimizing, and canceling out the voting strength of people of color in violation of the Fourteenth and Fifteenth Amendments to the Constitution.

**C.     Count 3:  Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth and Fifteenth Amendments Of The Constitution**

71.     The allegations set forth in paragraphs 1-61 above are hereby incorporated as if fully set forth herein.

72.     Unless enjoined, the LISD electoral system will remain in force and, therefore, LISD will continue to violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution by administering, implementing, and conducting future elections for Board members utilizing that unlawful system.

73.     Without the Court's intervention, the Board's actions and the electoral system will cause minority non-white voters irreparable harm because the electoral system denies those voters the opportunity to fully participate in the electoral process by diluting the strength of their vote, for which there is no adequate remedy at law.

74.     Accordingly, Ms. Dixon requests that the Court enter a permanent injunction prohibiting Defendants from administering, implementing, and conducting future elections for the LISD Board based on the at-large electoral system.  Such relief is authorized by the Voting Rights Act and principles of equity.

**D.      <u>Count 4:  Request For Attorneys' Fees</u>**

75.     The allegations set forth in paragraphs 1-61 above are hereby incorporated as if fully set forth herein.

76.     Because of LISD's unlawful electoral system, Ms. Dixon has been required to retain the undersigned counsel to present and prosecute the claims asserted herein.

77.     This action is a suit to enforce the voting guarantees of the Voting Rights Act. Pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), Ms. Dixon is entitled to recover her reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses as part of her costs for pursuing this lawsuit.

**VI.**

**REQUEST FOR RELIEF**

In light of the foregoing, Ms. Dixon respectfully requests this Court enter judgment in her favor and against all Defendants, providing for the following relief:

(a)     a judicial declaration that the at-large method for electing members to the LISD Board violates Section 2 of the Voting Rights Act;

(b)     a permanent injunction prohibiting LISD, its Trustees, agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Board under an at-large electoral system;

(c)     an order directing LISD to devise an election plan and implementation schedule that remedies the violations of Section 2 of the Voting Rights Act and U.S. Const. amend. XIV and XV. If LISD fails to formulate such a plan, the Court should order into effect a new election plan of its own, designed to remedy the violations of Section 2 and U.S. Const. amend. XIV and XV, and order elections to be held pursuant to that plan as promptly as possible;

(d)     an order that all future elections for the LISD Board comply with Section 2 of the Voting Rights Act and U.S. Const. amend. XIV and XV;

(e)     an award of reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), and any other applicable statute;

(f)     an award of costs of Court; and

(g)     any other relief, at law or in equity, to which Ms. Dixon is entitled and this

Court deems just and proper.

DATED:  April 12, 2022                    Respectfully submitted,


**BREWER STOREFRONT, PLLC**


By:*/s/ William A. Brewer III*
        William A. Brewer III
        State Bar No. 02967035
        wab@brewerattorneys.com
        Joshua Brandau
        State Bar No. 24124297
        (Application for Admission to the Eastern
        District Forthcoming)
        jyb@brewerattorneys.com
        1717 Main Street
        Suite 5900
        Dallas, Texas 75201
        Telephone: (214) 653-4000
        Facsimile: (214) 653-1015

        **ATTORNEYS FOR PLAINTIFF**

24